UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH G. PASIAK,

                                       Plaintiff,

   v.                                                                 5:06-CV-259
                                                                         (LEK/GJD)

MICHAEL J. ASTRUE,[1] COMMISSIONER OF
SOCIAL SECURITY,

                                       Defendant.
_____

HOWARD OLINSKY, ESQ., for Plaintiff
WILLIAM H. PEASE, Asst. U.S. Attorney for Defendant
MARLA PIAZZA SIEGEL, Special Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 18, 1998, alleging disability beginning March 30, 1993. (Administrative Transcript ("T."), 75-77). The application was initially denied on February 2, 1999, and upon reconsideration on April 21, 1999. (T. 50-55, 57, 59-61). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on

---

[1] Michael J. Astrue became Commissioner of Social of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this case for Jo Anne B. Barnhart.

November 3, 1999 before ALJ John P. Chwalek. (T. 334-68). Plaintiff testified at the hearing, but was not represented by counsel. (T. 336-68). The ALJ also considered, information provided by a vocational expert, who completed written responses to interrogatories from the ALJ. (T. 131-33). In a decision dated July 18, 2000, the ALJ found that plaintiff was not disabled. (T. 29-35). There is no indication in the record that plaintiff appealed the ALJ's July 18, 2000 denial to the Appeals Council.

On September 11, 2000, the Commissioner issued Acquiescence Ruling (AR) 00-4(2) in light of the Second Circuit's holding in *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000). (Defendant's Brief, 1-2). This ruling required the Commissioner to review the Residual Functional Capacity (RFC) determinations in cases in which the final decision was issued between April 7, 2000 and September 11, 2000. (T. 24). Because the decision in plaintiff's case was made during this time period, the RFC determination in plaintiff's case was reviewed.

On December 23, 2004, ALJ Joseph G. Medicis issued a supplemental decision finding that ALJ Chwalek's July 18, 2000 RFC determination was proper and had complied with *Curry v. Apfel* as well as AR 00-4(2). (T. 24-25). ALJ Medicis's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 2, 2006. (T. 6-8).

## CONTENTION

The plaintiff makes the following claim:

(1) The ALJ erred by finding there was sufficient evidence to support the RFC determination regarding plaintiff's ability to engage in bilateral manual dexterity. (Plaintiff's Brief, 15-17).

2

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

## FACTS

This court adopts the facts set forth in plaintiff's brief under the heading "Statement of Facts,"[2] with any exceptions as noted. *See also* Defendant's Brief, 1 (incorporating plaintiff's summary of the medical and other evidence with the exception of any inferences or conclusions asserted therein).

## DISCUSSION

1. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

---

[2] Plaintiff's Brief at 3-12.

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.  **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

4

were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

   A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

   "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212

(1983).

### 3. **Res Judicata**

The court notes that the Commissioner will not be required to consider repeated claims for the same relief, based on the same facts, once a final decision has been made, and the claimant has failed to appeal that decision. *Malave v. Sullivan*, 777 F. Supp. 247, 251 (S.D.N.Y. 1991). *See* 20 C.F.R. § 404.957(c). The doctrine of administrative *res judicata* applies when the agency has made a previous determination on the same facts and on the same issue or issues, and the previous determination has become final either by administrative or by judicial action. *Orozco v. Barnhart*, 2006 U.S. Dist. LEXIS 27880, *5-6 (S.D.N.Y. May 10, 2006)(citing 20 C.F.R. § 404.957(c)(1)).

Notwithstanding the application of *res judicata*, the regulations provide that the agency may reopen an "otherwise final and binding" decision. 20 C.F.R. § 404.987. The conditions upon which the Commissioner will reopen a case are also specified in the regulations. *Id.* § 404.988. The Supreme Court has held that the agency's denial of a motion to reopen a prior benefits application is not the type of "final decision" that confers federal court jurisdiction in a Social Security action. *Califano v. Sanders*, 430 U.S. 99, 107-109 (1977). An exception to this rule exists if the Commissioner's decision not to reopen is challenged on constitutional grounds. *Id.* The claimant is, however, free to pursue new claims, based on different facts or different time periods. *Id.*

Plaintiff in this case filed a previous application for disability insurance benefits

6

on March 23, 1995. (T. 29, 184-87). The claim was denied initially and on reconsideration. (T. 29, 190, 199-204, 213-15). After a hearing, ALJ John P. Chwalek[3] issued an unfavorable decision on March 27, 1997. (T. 39-44). Plaintiff filed a request for review with the Appeals Council, which was denied on October 6, 1997. (T. 29); Plaintiff's Brief, 2. No further appeal was taken. Plaintiff's Brief, 2. Thus, the Commissioner's finding that plaintiff was not disabled as of October 6, 1997 ***is binding on this court***.

The Second Circuit has held that if the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened. *Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003). This is generally referred to as a "constructive" reopening. *Id.* at 180-81. If the case has been "constructively" reopened in this manner, the Commissioner will have waived any claim of administrative *res judicata*, and the decision will be subject to judicial review on the merits. *Id.* at 180.

In this case, there are a great deal of medical records that were presented to the first ALJ in plaintiff's 1995 application, claiming disability as of March 30, 1993 due to instability of his right knee. (T. 40). In Judge Chwalek's July 18, 2000 decision, he stated that "it is not necessary to consider the question of whether the unfavorable decision made with respect to the prior claim should be reopened and revisited." (T. 30). ALJ Chwalek specifically refused to reopen the prior decision and did not consider any of the evidence from the prior application so as to constitute constructive

---

[3] The court notes that Judge Chwalek also issued the decision denying plaintiff's current application.

reopening. Thus, the relevant time period for consideration in this case is after October 1997.

### 4. Residual Functional Capacity (RFC)

The *only* issue in this case is whether the ALJ's determination that plaintiff had the RFC for sedentary work is supported by substantial evidence. In order to clarify this determination it is necessary to begin with a discussion of why plaintiff's case was reviewed by the Commissioner, long after the decision became final, and plaintiff failed to appeal. In *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000), the Second Circuit found that the Commissioner had the burden at the fifth step of the disability analysis to prove that the plaintiff could perform sedentary work. *Id.* at 123. As a result of the *Curry* decision, the Commissioner issued AR 00-4(2), requiring the Commissioner to re-evaluate certain cases according to the decision in *Curry*.

Plaintiff's case was reviewed pursuant to AR 00-4(2), and ALJ Medicis found that ALJ Chwalek's determination that plaintiff could perform sedentary work was proper. (T. 24-25). The court does note that AR 00-4(2) was rescinded in August of 2003, due to an amendment of the Social Security Regulations, specifically stating that although the Commissioner has the burden at step five of the disability analysis to show that a plaintiff can perform other work in the national economy, it is the plaintiff who has the burden at the first four steps. 20 C.F.C. §§ 404.1512(c) and (g), 404.1520(g), 404.1545(a)(3) and (a)(5), and 404.1560(c), *cited in* 68 Fed. Reg. 51317. These amendments made it clear that the plaintiff's burden of proof includes providing evidence that will be used by the Commissioner in determining plaintiff's

8

RFC during the first four steps of the analysis. *Id*.  This court will thus proceed to consider whether ALJ Medicis's and ALJ Chwalek's determinations are supported by substantial evidence.

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R § 404.1545; *see Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and ***may not simply make conclusory statements regarding a plaintiff's capacities***.  *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

Specifically, in determining the RFC under Step Four, an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and § 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184, at *1-2, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Mardukhayev v. Comm'r of Soc. Sec.*, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002).  As stated in Social Security Ruling 96-8p,

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or

9

> her past relevant work as it is generally performed in the national
> economy. However, without the initial function-by-function assessment
> of the individual's physical and mental capacities, it may not be possible
> to determine whether the individual is able to do past relevant work as it
> is generally performed in the national economy because particular
> occupations may not require all of the exertional and nonexertional
> demands necessary to do the full range of work at a given exertional
> level.

S.S.R. 96-8p, 1996 WL 374184, at *3. Furthermore, the RFC assessment must address an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."[4] *Id.* at *1.

In this case, the ALJ determined that although plaintiff's limitations precluded the performance of his past relevant work, plaintiff retained "the residual functional capacity to perform the exertional demands of sedentary work,[5] or work which is generally performed while sitting and never requires lifting in excess of ten pounds[]." (T. 33). The ALJ further found that plaintiff was "not able to lift and carry more than ten pounds[,]" he could not "tolerate prolonged walking [], and he is precluded from stair climbing, squatting and kneeling." (T. 33).

Plaintiff argues that, in making this determination, ALJ Chwalek did not include any restrictions on plaintiff's ability to reach or handle due to plaintiff's *wrist* injury.

---

[4] A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96-8p, 1996 WL 374184, at *1.

[5] Sedentary work involves:
lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 404.1567(a).

10

In April *1993*, plaintiff injured his right wrist in a fall. (T. 283). Dr. C. Perry Cooke noted that plaintiff had full range of motion, no neurovascular problems, but that an x-ray showed a small avulsion fracture and early osteophytosis. *Id.* In early May 1993, Dr. Cooke stated that there was no tenderness of plaintiff's right wrist, his range of motion was reasonably normal, he was neurovascularly intact, and there was very little swelling. (T. 285). In June 1993, Dr. Cooke stated that plaintiff's wrist was doing well with no particular tenderness, and his function was improving. (T. 287). However, plaintiff continued to complain of pain in the right wrist. (T. 289-90). Consultation with a hand surgeon was recommended to address plaintiff's ligament problems. *Id.*

In January *1994*, Dr. John F. Fatti examined plaintiff and found that range of motion of his right wrist was limited and grip strength was sixty pounds on the right and eighty pounds on the left. (T. 295). In July 1994, Dr. Fatti stated that range of motion was improving but that grip strength was only at thirty percent of what was normal. (T. 297). By November 1994, Dr. Fatti stated that plaintiff's range of motion was about eighty percent normal, he was neurologically intact, and grip strength was forty-six pounds on the right and forty-nine pounds on the left. *Id.* Dr. Fatti found that plaintiff should not lift over twenty pounds or use move his wrist repetitively. (T. 298). Dr. Fatti found that plaintiff's wrist injuries were most likely a permanent disability. (T. 298).

In May 1995, Dr. Fatti stated that plaintiff had ninety percent of his range of motion and placed the same restrictions as he had in November 1994. (T. 302). In

July 1995, consultative physician, Dr. Kalyani Ganesh, found that the range of motion of plaintiff's right wrist showed no dorsiflexion, but palmar flexion was preserved and normal. (T. 304). During the 1995 examination by Dr. Ganesh, plaintiff reported only that he had "trouble lifting because of a slight wrist problem." (T. 304). In June 1996, Dr. Daniel Elstein found that plaintiff had good grip strength, normal pronation and supination of both wrists, and only a slight restriction of dorsi and palmar flexion in the right hand. (T. 322). He stated that plaintiff had the ability to do some gross and fine manipulation using both upper extremities. (T. 323). In a medical source statement completed in July 1996, Dr. Elstein found that plaintiff did not have ***any*** limitations in regards to reaching or handling. (T. 326).

On January 13, 1999, Dr. Ganesh found that plaintiff could use both hands to tie and untie his shoes, he was able to zip a zipper, buckle and unbuckle, he needed no help dressing or undressing, he could hold a large and small object, open large and small caps, button a small and large button, write with a pen, and use a velcro fastener. (T. 148). Dr. Ganesh noted that plaintiff was using both hands ***quite actively***. *Id.* (emphasis added). He further found that plaintiff had normal range of motion in his wrists and fingers, and he could make a fist. (T. 149). Fine manipulation was intact bilaterally, and grip strength was 4-5/5 on the right and 5/5 on the left. (T. 149). Dr. Ganesh concluded that plaintiff had only a mild limitation in the amount that plaintiff could lift, carry, push, and pull. (T. 150).

On October 1, 1999, plaintiff's treating physician, Dr. Cooke completed a form,

stating that "pt remains @ total disability and continuing."[6] (T. 169-73). It is unclear what Dr. Cooke meant by "total disability" because in February 2000, Dr. Cooke responded to an inquiry from ALJ Chwalek, stating that plaintiff could perform a sedentary job without prolonged walking, stair climbing, squatting, or kneeling. (T. 180). No further limitations were mentioned. *Id.*

There is absolutely ***no evidence*** from the date plaintiff filed his current application for disability insurance benefits in 1998 until the date his insured status expired in December 2000 that there were any restrictions on his ability to reach or handle. Although in 1994 and 1995, Dr. Fatti found that plaintiff should refrain from repetitive wrist movement, by 1996, Dr. Elstein found that plaintiff did not have ***any limitations*** in reaching or handling. (T. 326). Dr. Elstein also found that plaintiff could sit for four hours "at a time," and could stand for two hours without resting. (T. 322-23).

Plaintiff bases his argument upon Dr. Fatti's reports, however, as stated above, the Commissioner's finding that plaintiff was not disabled prior to 1997 is binding on the court. Plaintiff's prior application raised the issue of his wrist injury and utilized the opinions of Dr. Fatti from 1994 and 1995. (*See* T. 39-44). There are no reports after 1997 that would substantiate a worsening of plaintiff's wrist condition. In fact, it is clear from the 1999 reports that plaintiff had no significant problem with his wrist. (T. 149-50). On January 13, 1999, Dr. Ganesh stated that plaintiff could make a fist, and that fine manipulation was intact bilaterally. (T. 149). Grip strength was 4-5/5 on

---

[6] The Court notes that the decision whether a claimant is disabled is one reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); 20 C.F.R. § 404.1527(e).

13

the right, and 5/5 on the left.  Thus, plaintiff's argument that the ALJ erred in failing to consider plaintiff's inability to reach and handle based upon Dr. Fatti's conclusions is barred and additionally not supported by any of the current evidence.[7]

The court would point out that the lack of bilateral manual dexterity is a non-exertional impairment that must be considered in determining whether it significantly restricts the exertional category of work that the plaintiff can perform. *See Mason v. Barnhart*, 96 Fed. Appx. 30, 31 (2d Cir. 2004).  It is true that most sedentary jobs require good use of the hands and fingers for fine movements such as picking, pinching, holding, grasping, and turning. *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 135-36 (D. Conn. 2002)(citing *inter alia Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999)).

The relevant medical evidence in this case does not support a finding that any residual problems with plaintiff's right wrist "significantly restrict" plaintiff's ability to perform the full range of sedentary work.  The only evidence cited by plaintiff's counsel relates to a time period not at issue.  In any event, when an individual's non-exertional impairments do significantly restrict an exertional category of work, the result is that the ALJ may not necessarily utilize the Medical Vocational Guidelines[8] alone in determining whether alternative work exists at step five of the disability analysis. *See Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  Regardless of

---

[7] Plaintiff's additional argument that the vocational expert's testimony was in error due to the failure of the ALJ to include restrictions regarding reaching and handling is meritless based upon the evidence discussed above.

[8] 20 C.F.R. Part 404, Subpt. P, App.2.

plaintiff's claim that the ALJ did not properly consider the restrictions caused by plaintiff's wrist, the ALJ did not rely solely upon the guidelines and used a vocational expert to determine whether alternative jobs existed for plaintiff in the national economy.

This court finds that ALJ Medicis's conclusion that plaintiff could perform sedentary work, affirming ALJ Chwalek's findings, is supported by substantial evidence. There is no question that plaintiff has a knee impairment and that his impairment prevents him from performing his prior work as a firefighter. However, there was never any indication that sitting was a problem for plaintiff. In fact, plaintiff does not currently claim that he is unable to sit. Plaintiff claims that the ALJ erred by not specifying how long the plaintiff could walk. ALJ Chwalek found that plaintiff could not tolerate "prolonged walking." (T. 33, 35). The ALJ also noted that "prolonged walking" was not required in sedentary work. (T. 33).

While there is no specific time set for "prolonged" walking, the ALJ also utilized the services of a vocational expert (VE) and did not rely solely upon the Medical Vocational Guidelines at step five of the analysis. (T. 131-33). In his written questions to the VE, the ALJ specifically mentioned that the plaintiff could perform sedentary work, but could not engage in "prolonged walking." (T. 132). The VE found that based upon the ALJ's statements of plaintiff's RFC, the plaintiff could perform a significant number of jobs in the national economy. (T. 133).

The court must also note, that regardless of the fact that the ALJ did not specify a duration for plaintiff's ability to walk, he found that plaintiff could perform

sedentary work, which does not require prolonged walking, thus, this failure would not affect the final decision in plaintiff's case.  Finally, a review of the transcript of plaintiff's hearing shows that plaintiff's own testimony supports his ability to perform sedentary work.  At the hearing, plaintiff testified that during the day, his activities consisted in sitting "most of the time." (T. 362).  Plaintiff then stated that he would "walk here, walk there, sit here, go out there, mostly just sit and walk, walk and sit." (T. 362)

At the hearing, plaintiff was more concerned with the fact that the alternative work proposed by the first ALJ was not work that plaintiff would *want* to perform. (T. 364-65).  Referring to a telemarketing job, plaintiff stated that "I don't see that as gainful employment if you ask me." (T. 365).  Plaintiff also stated that he could not "be happy" doing anything but a firefighting job, "that's why I don't do nothing [sic] now." (T. 366).  Although the ALJ attempted to explain that the standard for Social Security Disability was different than other "insurance programs," plaintiff simply stated that he felt that he was entitled to obtain benefits and that the ALJ should "[j]ust give me what I want." (T. 366).  Plaintiff never really disputed the fact that he could perform sedentary work, he merely stated that the jobs offered as alternatives were unsatisfactory to him.

All the medical and vocational evidence supports the ALJ's finding that plaintiff could perform sedentary work, and this court finds that the Commissioner's decision is supported by substantial evidence.

**WHEREFORE,** based on the findings above, it is hereby

16

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 23, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge